UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA DE LOS SANTOS,

      Plaintiff,                                         Case No.

v.                                                    Hon.

APRN CORPORATION,

      Defendant.

---

**NOAH S. HURWITZ (P74063)**
**NACHT, ROUMEL, HURWITZ, P.C.**
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Rebecca De Los Santos, by and through her attorneys, NACHT LAW, P.C., and hereby complains of Defendant, APRN CORPORATION, as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Rebecca De Los Santos ("Plaintiff") is a resident of Tipton, Michigan in Lenawee County.

2. Defendant APRN Corporation ("Defendant") is a for profit corporation with its headquarters and principal place of business in Holland, Ohio.

3. Defendant has a registered office located in Tecumseh, Michigan. Defendant is a multi-state provider for ancillary health services.

4. Claims in this action include violations of the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA").

5. On or about January 6, 2021, Ms. De Los Santos filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), for discrimination under the ADA.

6. On or about October 14, 2021, the EEOC issued a right to sue letter to Ms. De Los Santos.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

8. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the events giving rise to Ms. De Los Santos' claims took place and where Defendant regularly conducts business.

## GENERAL ALLEGATIONS

9. Ms. De Los Santos worked for Defendant as a Senior Physical Therapy Aide/Supervisor.

10. Ms. De Los Santos began employment with Defendant in 2002.

11. Ms. De Los Santos suffers from a severe respiratory illness consisting of asthma stemming from chronic sinusitis.

12. During a flare up, Ms. De Los Santos develops shortness of breath and nonstop coughing, as well as nocturnal coughing. These flare ups are continuous for a 6-to-7-week period.

13. Ms. De Los Santos' respiratory symptoms are exacerbated by wearing a mask due to the ongoing COVID-19 pandemic.

14. On or about July 30, 2020, Ms. De Los Santos' symptoms lead her to request work accommodations pursuant to the ADA.

15. Ms. De Los Santos suggested a host of reasonable accommodations, supported by medical documentation from her treating physician, Dr. Sarah Kaminsky.

16. Dr. Kaminsky's recommendations included (a) providing Ms. De Los Santos with a relatively sterile private space to take 2 of the 4 nebulizer treatments per day for her asthma; (b) 10 minute breathing breaks once every hour if needed due to an inability to remove her mask inside the clinic; (c) no work in the pool due to difficulty breathing with the humidity while wearing a mask; (d) time off if necessary to attend pre-scheduled doctor appointments; and (e) only working two 8-hour shifts per week until her medical condition improved.

17. Ms. De Los Santos provided the medical accommodation request to Defendant with a note that stated, "these ideas are not inflexible."

18. Around this time, Human Resources Manager Robert Leffler told Ms. De Los Santos, "maybe it's time for you to talk to your husband Juan about well, you know," referring to Ms. De Los Santos leaving the company.

19. On or about August 13, 2020, Ms. De Los Santos provided Defendant with a second medical document from Dr. Kaminsky, which requested the same accommodations listed above.

20. Defendant had a duty to engage in the interactive process.

21. Despite the flexible list of possible accommodations Defendant could have utilized, Defendant never engaged in the ADA's interactive process.

22. Instead, Defendant placed Ms. De Los Santos on an involuntary indefinite medical leave of absence.

23. Her leave of absence leave was to last from August 3, 2020, through October 26, 2020.

24. On or about August 18, 2020, Ms. De Los Santos sent Defendant additional medical documentation supporting her disability accommodation request from asthma and allergy specialist Dr. Benjamin Song.

25. Dr. Song described the effects of Ms. De Los Santos' asthma.

26. Dr. Song's medical analysis indicated that Ms. De Los Santos' asthma flares were triggered due to wearing a mask.

27. On or about October 20, 2020, prior to the expiration of her FMLA protected leave, Ms. De Los Santos emailed Defendant's Human Resources Manager and Payroll Administrator Kim Hetherington and Human Resources Manager Robert Leffler to renew her efforts to seek a reasonable accommodation.

28. Ms. De Los Santos once again requested: (a) a clean private area to conduct her medical treatments during the winter months; (b) short breaks to remove her mask as needed; (c) a temporary desire not to work in the pool area; (d) time off to attend prescheduled doctor appointments; and (e) a part-time work schedule capped at four hours per day for no more than three days a week.

29. Ms. De Los Santos triggered the interactive process multiple times by requesting reasonable accommodations.

30. Defendant failed to ever engage in the interactive process, never once accepting any of the requested accommodations and failing to provide any specific reason why the respective accommodation requests posed an undue hardship to the company.

31. On or about October 22, 2020, days before the expiration of her involuntary leave, Defendant unceremoniously terminated Ms. De Los Santos.

32. Defendant terminated Ms. De Los Santos "due to [Ms. De Los Santos'] inability to perform job duties as [she] did prior to [her] FMLA request, and only

5

being available 4 hours each day for a 3-day work week." Defendant also stated, "unfortunately, we do not have 12 hours a week available for an Aide at this time."

33. With that statement, Defendant refused to engage in the interactive process and explore the many ways in which it could have accommodated Ms. De Los Santos.

34. Ms. De Los Santos was trained in multiple positions and could have been reinstated in some fashion, such as office administrative staff.

35. Defendant deprived Ms. De Los Santos of reinstatement upon her return from protected medical leave.

## COUNT I
## DISABILITY DISCRIMINATION AND
## FAILURE TO ACCOMMODATE IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

36. Plaintiff hereby restates the foregoing paragraph as set forth fully herein.

37. At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA, as she had physical impairments that substantially limited her in the performance of major life activities.

38. These impairments included but were not necessarily limited to those set forth in Dr. Kaminsky's and Dr. Song's letters provided to Defendant, which noted Plaintiff's serious medical conditions.

39. Plaintiff's disability substantially limited her major life activities.

40. Plaintiff was qualified to perform the essential functions of her job with reasonable accommodations.

41. Plaintiff made numerous flexible requests for reasonable accommodations.

42. Such accommodations would not have been unduly burdensome to Defendant.

43. Defendant is an employer within the meaning of the ADA.

44. Defendant knew or had reason to know of Plaintiff's disability.

45. Defendant failed to accommodate Plaintiff, failed to engage in the interactive process required under the ADA, and otherwise subjected Plaintiff to adverse employment actions based on her disability as described above, including but not limited to failing to engage in the interactive process and then unlawfully terminating her.

46. As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to, lost wages, damage to her professional reputation, emotional distress, outrage and humiliation.

**COUNT II**
**RETALIATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

47. Plaintiff hereby restates the foregoing paragraphs as set forth fully herein.

48. Plaintiff engaged in protected activity when, in good faith, she requested accommodations for her disability, in communications with Defendant on July 30, 2020 and again on October 20, 2020.

49. This exercise of protected rights was known to Defendant.

50. In retaliation for complaining about disability discrimination, Plaintiff was subjected to adverse employment actions by Defendant, including but not limited to being terminated while on protected FMLA leave.

51. Defendants' reasons for taking these actions were retaliatory and not legally justified.

52. As a result of Defendant's actions, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to, lost wages, damage to her professional reputation, emotional distress, outrage and humiliation.

## COUNT III
## FAMILY AND MEDICAL LEAVE ACT INTERFERENCE

53. Plaintiff hereby restates the foregoing paragraphs as set forth fully herein.

54. Defendant was an employer under the FMLA.

55. Plaintiff was an eligible employee under the FMLA, in that she had a serious health condition and was otherwise entitled to take FMLA leave.

56. The medical conditions described above constituted a serious health condition.

57. Plaintiff gave Defendant appropriate notice of these conditions and was placed on protected medical leave under the FMLA.

58. Defendant interfered with Plaintiff's right to unpaid leave by terminating her on October 22, 2020, before the expiration of FMLA leave.

59. As a result, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

## COUNT IV
## FAMILY AND MEDICAL LEAVE ACT RETALIATION

60. Plaintiff hereby restates the foregoing paragraph as set forth fully herein.

61. Plaintiff engaged in statutorily protected activity by agreeing to and being placed on protected leave as defined by the FMLA.

62. Defendant retaliated against Plaintiff by not reinstating her employment at the expiration of her protected leave as defined by the FMLA.

63. This course of conduct was a willful violation of the FMLA.

64. As a result, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

### COUNT VI
### FAILURE TO PROVIDE PERSONNEL FILE PURSUANT TO BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT

65. The "Bullard-Plawecki Employee Right to Know Act," MCL 423.501 *et sq*. ["Right to Know Act"], in relevant part grants an employee the right to receive a copy of his or her personnel records.

66. On November 3, 2020, Plaintiff submitted a written request for her personnel records through undersigned counsel

67. To date, the personnel records have not been furnished, nor any reason or communication advanced for the refusal.

68. Defendant has therefore violated the Right to Know Act by willfully and knowingly refusing to send Plaintiff a copy of her personnel records.

69. Defendant's willful violation of the Right to Know Act has damaged Plaintiff as described herein and below, and entitles Plaintiff to injunctive relief, $200 plus actual damages, costs, and reasonable attorney fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A.	For Plaintiff, judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under the ADA and FMLA;

B.	Award Plaintiff appropriate equitable relief, compensatory damages, and exemplary damages;

C.	For Plaintiff, appropriate civil penalties;

D.	For Plaintiff, all costs, attorneys' fees, and interest incurred prosecuting this claim; and

E.	All further relief as the Court deems just and equitable.

Respectfully submitted
NACHT, ROUMEL, HURWITZ, P.C.

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorney for Plaintiff*

Dated:  November 12, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA DE LOS SANTOS,

       Plaintiff,                      Case No.

v.                                             Hon.

APRN CORPORATION,

       Defendant.

**Noah Hurwitz (P74063)**
**NACHT, ROUMEL, HURWITZ, P.C.**
*Attorneys for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

## **JURY DEMAND**

NOW COMES Plaintiff, Rebecca De Los Santos, by and through her attorneys, NACHT LAW P.C., and hereby demand a trial by jury of the issues in the above-captioned cause of action.

                                                    Respectfully submitted
                                                    NACHT, ROUMEL, HURWITZ, P.C.

                                                    */s/ Noah S. Hurwitz*
                                                    Noah S. Hurwitz (P74063)
Dated: November 12, 2021           *Attorney for Plaintiff*